H. P. LAU CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20990.   Promulgated March 25, 1929.

*Arthur Carnduff, Esq.,* for the respondent.

OPINION.

MILLIKEN: The foregoing statement of facts is taken from the uncontroverted allegations and admissions in the pleadings and exhibits. It will be observed from the findings of fact that the respondent determined and treated the petitioner and the May Bros. Co. as affiliated corporations from January 1, 1922, to June 30, 1922, and because of its ownership of May Bros. Co. capital stock, the petitioner was considered the parent company and May Bros. Co. the subsidiary. The respondent further determined that subsequent to June 30, 1922, May Bros. Co. was simply a branch business of petitioner.

The petitioner does not allege that these statements of fact by the respondent were erroneous and does not complain thereof. On the contrary, he files the statement of the respondent with his petition as part thereof and raises no issue of fact concerning it.

Under these circumstances and in the absence of evidence to the contrary, we must accept the finding of the respondent that these corporations were affiliated as a fact. In the recent case of *Blair* v. *Mathews*, 29 Fed. (2d) 892, the court, in holding that uncontroverted statements of fact by the Commissioner must be accepted, said:

There was no occasion to produce evidence as to a fact stated by the Commissioner in his communications to the taxpayer giving notice of the determination of a deficiency, and as to which no issue was raised.

It should be specifically borne in mind that the loss here claimed was a loss resulting when the affiliation status obtained. Neither is a subsidiary claiming a loss. The parent company is claiming a loss represented by the difference between the cost of the stock in the subsidiary and an amount received when the stockholders decided upon liquidation. What assets the petitioner may have retained in the way of good will or otherwise of the subsidiary is not before us.

We have held in a number of cases that where two or more corporations are affiliated and a consolidated return is required, intercompany transactions are not considered in computing the gain or loss to the affiliated group for income-tax purposes, and where one corporation of an affiliated group owns stock in another and sells the same, no deductible loss or taxable gain is to be reflected in the consolidated return. This being the rule in the case of sales, *a fortiori*, it must be the same in case of liquidation where the subsidiary was continued as a branch of the parent company.

In the case of *Farmers Deposit National Bank*, 5 B. T. A. 520, where a bank owned stock in a trust company and was affiliated with

it, the respondent taxed a gain on the sale of the stock, but the Board held this erroneous and said:

The effect of the consolidation of two or more companies is to weld them together for the purpose of computing the tax, as though they existed, in fact, as a single business enterprise. Their separate and distinct identities are merged in the interest of their community, just as effectively, so far as concerns the determination of the income and profits taxes, as though they existed under a single charter. These principles are fundamental and go to the very root of the theory underlying the statutory requirement of consolidated returns for affiliated corporations. If these are not the correct principles, and if it was not the purpose of Congress to treat an affiliated group as a single taxpayer; then, certainly, Congress in enacting the provisions of section 240 of the Revenue Act of 1918 has fallen far short of accomplishing its purpose to prevent the evasion and inequality of taxes arising out of the arbitrary shifting of income and capital among affiliated corporations. * * *

\* \* \* \* \* \* \* \*

Applying these principles to the facts in this case, what is the situation? The Farmers Deposit Trust Co. and the Farmers Deposit National Bank were, during the taxable year 1919, affiliated within the meaning of section 240 (b) of the Revenue Act of 1918. They were, for the purposes of the income and profits taxes, one and the same taxpayer. The sale of the Farmers Deposit Trust Co. of its capital stock holdings in the Farmers Deposit National Bank must be treated, for the purpose of the tax, as nothing more than a sale by the affiliated group of its own capital stock. The entire proceeds from the sale of this stock represented additional capital to the affiliated group—the investment of the new stockholders who purchased the stock. The sale was a capital transaction which could not give rise to a taxable gain or a deductible loss. The Commissioner erred in treating the excess of the selling price over the cost of this stock as taxable income to the Farmers Deposit Trust Co. and the affiliated group.

In *H. S. Crocker Co.*, 5 B. T. A. 537, where the respondent sought to tax as income to the affiliated group the difference between the cost and sales price to the parent of the stock of the subsidiary, we said:

The taxable group, if the Commissioner's theory were followed, would have to account twice for the same profit or would be allowed a double deduction of the same loss. We do not believe the provision for a consolidated return intends any such result. We do not believe that through the medium of a subsidiary corporation it was possible, under the Revenue Act of 1918, for a corporation to cause its subsidiary to have losses so that its assets became depleted, and then by selling the stock of that subsidiary to have the deduction a second time, and the same rule necessarily follows as to profits. No such claim as is here made by the Commissioner could be made in the case of a company selling a corresponding unincorporated branch of its business. It was to avoid just such inequities in taxation between two business units differently organized, as well as to prevent tax evasion by intercompany transactions, that the provision for consolidation was enacted.

The effect of consolidation, in the language of congressional committees quoted in other decisions of the Board relating to affiliations, is to treat that

as an economic unit which really is an economic unit. The statute should be so interpreted that consolidation can not be so carried out as to make evasion possible, or so carried out as to make accidental differences result in tax. This can only be done by disregarding corporate lines in computing the income and treating the affiliated group as one corporation. When this is done it is clear that a transaction such as we have here results in no profit or loss to the affiliated group, being a change in form of a profit or loss previously realized and reflected in the assets or liabilities of one of the group.

It is pertinent to point out that the affiliated group was entitled to the benefit of a deduction for any loss which resulted from the sale of the assets of the subsidiary, and any operating losses which occurred during the period of ownership. The stock of the subsidiary having been acquired by the parent at its book value, to allow the deduction now claimed would result in a double deduction by the affiliation; once as operating losses or losses from the sale of assets, and next as losses from the sale of stock.

See also *United States Trust Co.*, 1 B. T. A. 901; *Interurban Construction Co.*, 5 B. T. A. 529, 1292; *Gould Coupler Co.*, 5 B. T. A. 499; *Baker-Vawter Co.*, 7 B. T. A. 594; *Remington Rand*, 11 B. T. A. 773; *Fidelity National Bank & Trust Co.*, 14 B. T. A. 904; *United Drug Co.* v. *Nichols*, 21 Fed. (2d) 160.

In all of the above-cited cases, the question was whether a taxable gain or deductible loss resulted to an affiliated group from dealing in the stock of one member of that group, and it was held in each case that neither gain nor loss resulted. The same doctrine applies here.

No error was alleged relative to 1923.

*Judgment will be entered for the respondent.*